# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 14, 2005 Session

## DON DAUGHERTY v. SONY ELECTRONICS, INC., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-202-03     Harold Wimberly, Judge**

---

**No. E2004-02627-COA-R3-CV - FILED JANUARY 26, 2006**

---

This potential class action lawsuit was filed by Don Daugherty ("Plaintiff") on behalf of himself and all other Tennessee residents who purchased certain specified DVD players from Sony Electronics, Inc. ("Sony"). Plaintiff alleged in his complaint that the DVD players were inherently defective, that Sony was aware of these defects, and that Sony nevertheless marketed and sold the defective DVD players. Plaintiff brought claims for breach of express warranty, breach of implied warranty, unjust enrichment, money had and received, as well as a violation of the Tennessee Consumer Protection Act. Sony's motion seeking to have all of the claims dismissed was granted by the Trial Court. Plaintiff appeals the dismissal of all five claims. We affirm the judgment of the Trial Court with respect to the claims for breach of express warranty, breach of implied warranty, unjust enrichment, and money had and received. We reverse the judgment of the Trial Court dismissing Plaintiff's Tennessee Consumer Protection Act claim.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit**
**Court Affirmed in Part and Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., filed a separate concurring Opinion.

Gordon Ball, Knoxville, Tennessee, for the Appellant Don Daugherty.

John A. Lucas and John T. Winemiller, Knoxville, Tennessee, for the Appellee Sony Electronics, Inc.

**OPINION**

**Background**

This putative class action[1] lawsuit was filed by Plaintiff on behalf of himself and all Tennessee residents who purchased Sony DVD players bearing certain specified model numbers. Plaintiff sued Sony Electronics, Inc., Sony Corporation of America[2], and Does 1 through 50. According to the complaint, Sony manufactured thousands of DVD players with serious inherent defects that have "not only resulted in extreme annoyance and inconvenience for Class members but also in substantial outlays of money for repeated repairs." Plaintiff further alleged that "Sony is and has been fully aware of the defect but has thus far refused to issue a recall of the products. Even more egregiously, Sony affirmatively and deceptively denies the existence of the problem when Class members call to complain and seek a free repair of the product or a refund of the purchase price." With regard to Plaintiff's specific cause of action, he claims that he purchased a Sony DVD player for $249.99 in January of 2000. Plaintiff further claims that over two and one-half years later, in October of 2002, he began experiencing problems with the DVD player of the type referenced in the complaint. In December of 2002, Plaintiff eventually purchased a new Sony DVD player for $189.00.

Plaintiff's complaint referenced several Sony advertisements wherein Sony allegedly "touts" the quality of its products in general and which contain comments to the effect that "the company has earned a solid reputation for quality, reliability, innovation and stylish design." With regard to Sony's marketing of its DVD players, Plaintiff referenced various advertisements where Sony described itself as "setting the standard" with its DVD players which were described as "superior."

According to Plaintiff, the DVD players come with a standardized "Limited Warranty" for one year on parts and ninety days for labor, although in some cases the warranty on labor is extended to one year. Plaintiff further alleged that the DVD players all suffer from common defects which typically manifest themselves within ten to fourteen months after purchase, or "just after the one year warranty for parts has expired." Plaintiff claims these DVD players were sold by Sony with full knowledge of the defects. Plaintiff sued for: (1) breach of implied warranty; (2) breach of express warranty; (3) unjust enrichment; (4) money had and received; and (5) a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*

Sony filed a motion to dismiss seeking to have all five claims dismissed. Following a hearing, the Trial Court granted the motion and dismissed the entire complaint. Plaintiff appeals claiming the Trial Court erred when it dismissed all five of the claims alleged in the complaint.

---

[1]Because all of Plaintiff's claims were dismissed, the Trial Court never certified the class. None of the issues on appeal involve whether this lawsuit was properly filed or maintainable as a class action, whether Plaintiff can properly represent the class, etc. We express no opinion on any of these class action related issues.

[2] Sony Corporation of America was voluntarily dismissed via stipulation of the parties.

**Discussion**

I.      Plaintiff's Claims for Breach of Express and Implied Warranties.

While the motion to dismiss was pending, Sony filed the affidavit of Michael DeRosa, Manager of the Sustaining Engineering-Training-Service Promotion Department at Sony Electronics, Inc. Among other things, this affidavit set forth the particular warranty that was provided to Plaintiff when he purchased the DVD player in January of 2000. Because this affidavit was relied upon by the Trial Court when dismissing the breach of express and implied warranty claims, we will review the dismissal of these claims under the standard utilized for reviewing a grant of summary judgment.[3] In *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004), our Supreme Court recently reiterated this standard when it stated:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples*, 15 S.W.3d at 88.
>
> * * *
>
> When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

---

[3] In relevant part, Tenn. R. Civ. P. 12.02 provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair*, 130 S.W.3d at 763-64, 767 (quoting *Staples*, 15 S.W.3d at 88-89).

Since Plaintiff makes the same argument regarding whether the Trial Court erred in dismissing the breach of express and implied warranty claims, we will discuss these claims together. The written warranty provided to Plaintiff states, in relevant part, as follows:

## LIMITED WARRANTY

Sony Electronics Inc. ("Sony") warrants this Product (including any accessories) against defects in material or workmanship as follows:

1.      LABOR:  For a period of 90 days from the date of purchase, if this product is determined to be defective, Sony will repair or replace the Product, at its option, at no charge, or pay the labor charges to any Sony authorized service facility.  After the warranty period, you must pay for all labor charges.

2.      PARTS:  In addition, Sony will supply, at no charge, new or rebuilt replacements in exchange for defective parts for a period of one (1) year.  After 90 days from the date of purchase, labor for removal and installation is available from Sony authorized service facilities or a Sony Service Center at your expense.

* * *

REPAIR OR REPLACEMENT AS PROVIDED UNDER THIS WARRANTY IS THE EXCLUSIVE REMEDY OF THE CONSUMER.  SONY SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR BREACH

OF ANY EXPRESS OR IMPLIED WARRANTY ON THIS PRODUCT. EXCEPT TO THE EXTENT PROHIBITED BY APPLICABLE LAW, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ON THIS PRODUCT IS LIMITED IN DURATION TO THE DURATION OF THIS WARRANTY.

---

Some states do not allow the exclusion or limitation of incidental or consequential damages, or allow limitations on how long an implied warranty lasts, so the above limitations or exclusions may not apply to you. In addition, if you enter into a service contract with the Sony Partnership within 90 days of the date of sale, the limitation on how long an implied warranty lasts does not apply to you. This warranty gives you specific legal rights, and you may have other rights which vary from state to state.…

Plaintiff argues that Sony made two express warranties that were breached. Specifically, Plaintiff claims Sony expressly warranted the DVD players to be "defect-free" and in a "merchantable condition." As to the claimed warranty that the DVD player was "defect free," emphasis is placed on the decision of the Connecticut Superior Court in *Zeigler v. Sony Corporation of America*, 849 A.2d 19 (Conn. Super. Ct. 2004), which also involved a potential class action lawsuit alleging Sony had marketed and sold DVD players it knew to be defective. *Id.* at 21. In *Zeigler*, as in the present case, the plaintiff alleged in the complaint that Sony expressly warranted the DVD players to be in a "defect-free and merchantable condition." *Id.* at 23. Sony filed a motion to strike the entire complaint which apparently is the functional equivalent of a motion to dismiss for failure to state a claim under Tennessee law. A motion to strike a complaint under Connecticut law "tests the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted." *Id.* at 21, 22. This is the same standard utilized in Tennessee when considering a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn. 1997), *infra*.

In denying the motion to strike the breach of express warranty claim, the *Zeigler* court noted that a conflict within a warranty can arise when that warranty provides that the product is defect-free and, at the same time, a repair and replace warranty also is provided. *Zeigler* added that this "remedial conflict" between the two express provisions of a warranty can result in the remedial provision of the warranty failing of its essential purpose. *Id.* at 23 (citing *Comind, Companhia de Seguros v. Sikorsky Aircraft*, 116 F.R.D. 397, 414 (D. Conn. 1987)("If Comind is successful in establishing that the part was latently defective and that the defect was not reasonably discoverable or actually discovered within the 90 day limitation period, thus leaving the buyer without a remedy for latent defects *despite the defect[-free] guarantee*, then the repair or replacement limitation is without effect.")(emphasis added). The *Zeigler* Court also stated:

The second count asserts a breach of express warranty; specifically that the defendants warranted "the Sony DVD/DVP products were in a defect-free and merchantable condition" when sold though, in fact, they contained defective electrical systems.

\* \* \*

The plaintiff states that the defendants "expressly warranted" the products were in a "defect-free" condition. The defendants deny that but fail to provide the court with any documentary evidence or other means of resolving these antagonistic assertions - i.e., an affidavit stating no express warranty the product was defect-free was ever provided. Again, the court, on a motion to strike, is obligated to construe the pleading in favor of … [the pleader]. The defendants' inability to address what is asserted in the complaint and to establish conclusively the absence of a "remedial conflict" defeats their motion on the second count.

*Zeigler*, 849 A.2d at 23-24.

There is one critical and obvious difference between *Zeigler* and the present case. Specifically, in the present case there is an affidavit from Sony stating that no other warranty was provided to Plaintiff other than what is contained in the "Limited Warranty." Because this affidavit was considered by the Trial Court, Sony's motion on the warranty claims must be treated as a motion for summary judgment, not a motion to dismiss for failure to state a claim. Accordingly, whether the complaint technically states a claim for breach of express and implied warranties is not the issue. Rather, the issue is whether a genuine issue of material fact exists on Plaintiff's claims that Sony breached express and implied warranties. In short, what was lacking in *Zeigler* is present here.

The DeRosa affidavit successfully negated Plaintiff's claim that Sony expressly warranted its DVD players to be "defect-free" as such a warranty clearly is not contained within the Limited Warranty set forth above. A reasonable reading of the Limited Warranty actually provided by Sony in this case is not that Sony warranted the DVD player to be "defect-free" but rather that Sony warranted that the product would be repaired or replaced, under certain limited circumstances, if the product had any defect in material or workmanship. Plaintiff thus was required to establish a genuine issue of material fact on this claim, which he failed to do. Plaintiff directs this Court to nothing that would support a claim that Sony actually warranted the DVD player to be "defect-free," other than bare allegations in the complaint. While such bare allegations may be sufficient to withstand a Rule 12.02(6) motion to dismiss, they are insufficient to defeat a properly supported motion for summary judgment. Furthermore, absent any affirmative proof that such a warranty actually was made, there is no "remedial conflict" as was present in *Zeigler* and the repair and replace warranty which was provided by Sony cannot be said to fail of its essential purpose.

As noted, Plaintiff also contends that Sony warranted the DVD players to be in a "merchantable condition." It is unclear whether Plaintiff is referring to an express warranty or an implied warranty of merchantability. Either way, Plaintiff loses. The warranty quoted above states "repair or replacement as provided under this warranty is the exclusive remedy …. Any implied warranty of merchantability or fitness for a particular purpose on this product is limited in duration to the duration of this warranty." This language can be viewed in two ways. It can be read as disclaiming any implied warranty of merchantability only to the extent that such an implied warranty would exceed the one year duration of the express warranty. Another way to read this language is as totally disclaiming any implied warranty of merchantability and replacing it with an express warranty of merchantability for a one year period. Regardless of which way this language is interpreted, Plaintiff's complaint establishes that he had no problems whatsoever with his DVD player until approximately two years and nine months after the date of purchase. Plaintiff, therefore, cannot establish either a breach of a one-year express warranty of merchantability or a one-year implied warranty of merchantability. It is worth mentioning that Plaintiff does not allege that his DVD player failed within the one year warranty period, that it was thereafter presented for repair, or that Sony or its representative failed to provide any contractually required repairs. We conclude that the Trial Court correctly granted summary judgment to Sony on Plaintiff's claim for breach of express warranty as well as his claim for breach of implied warranty.

II.     Plaintiff's Claims for Unjust Enrichment and Money Had and Received.

No extraneous material was relied upon by the Trial Court when dismissing Plaintiff's remaining claims. Therefore, we will review the dismissal of these claims under a different standard. Our standard of review as to the granting of a motion to dismiss is set out in *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn. 1997). In *Stein*, our Supreme Court explained:

> A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc*., 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower court's legal conclusions *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996); *Cook, supra*.

*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

Very recently, our Supreme Court had occasion to discuss claims of unjust enrichment in *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512 (Tenn. 2005). Each of the defendants in *Freeman* had previously pled guilty to fixing the price of sorbates in violation of the federal Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*[4] *Freeman*, 172 S.W.3d at 516. The plaintiff in *Freeman* was an end-user of food products which contained sorbates and which were purchased at supermarkets in New York. The plaintiff sued the defendants alleging a violation of the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.*, and unjust enrichment. *Freeman*, 172 S.W.3d at 516. With respect to the unjust enrichment claim, the Court stated:

> We have previously recognized two types of implied contracts: contracts implied in fact and contracts implied in law. *See Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 153-54 (1966). Contracts implied in fact arise under circumstances establishing the parties' mutual intention to contract. *Id.* at 154 (citation omitted). Contracts implied in law or quasi contracts are created by law without the parties' assent and are based upon reason and justice. *Id.* (citation omitted); *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). Courts may impose a contract implied in law *where no contract exists* under various quasi contractual theories, including unjust enrichment. *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998).
>
> The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Paschall's, Inc.*, 407 S.W.2d at 155. The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. *Id.*; *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596. The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract. *Paschall's, Inc.*, 407 S.W.2d at 155; *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596.

*Freeman*, 172 S.W.3d at 524-25 (emphasis added). *See also Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)("Courts will impose a contractual obligation under an unjust enrichment theory when: (1) *there is no contract between the parties* or a contract has

---

[4] Sorbates are food preservatives used to slow the growth of mold in certain foods.

become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation.") (emphasis added).

The foregoing makes clear that one of the underlying requirements for stating an unjust enrichment claim is that there be no valid and enforceable contract between the parties. In the present case, the Limited Warranty provided by Sony certainly constitutes a contract between Sony and Plaintiff, and needless to say it is a contract which touches upon the very heart of Plaintiff's lawsuit. We decline to hold that Plaintiff stated a claim for unjust enrichment simply because something he purchased broke after the contractual warranty period expired. Because Plaintiff's complaint establishes the existence of a valid and enforceable contract between Plaintiff and Sony, Plaintiff failed to state a claim upon which relief can be granted for unjust enrichment, and the Trial Court properly dismissed this claim.[5]

With regard to Plaintiff's claim for money had and received, while this claim is mentioned in the heading for the argument on unjust enrichment, the body of Plaintiff's brief never mentions this claim. Plaintiff does not set forth the requirements for stating a claim for money had and received, how his complaint sufficiently states such a claim, or why the Trial Court erred when it dismissed this claim. Accordingly, we assume Plaintiff has abandoned this issue. *See Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)("In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position as required by Tennessee Rules of Appellate Procedure 27(a). 'Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.'") (quoting *Branum v. Akins*, 978 S.W.2d 554, 557 n.2 (Tenn. Ct. App. 1998)). The judgment of the Trial Court dismissing Plaintiff's claim for money had and received is affirmed.

III.    Plaintiff's Claim Under the Tennessee Consumer Protection Act.

The gist of Plaintiff's claim under the Tennessee Consumer Protection Act ("TCPA") is that Sony's advertisements about the quality and performance of its DVD players were false and misleading. What must be remembered is that whether Plaintiff ultimately can prove this claim is not the issue now before us. At this motion to dismiss stage of the proceedings, we are only reviewing the complaint to determine whether it states a cause of action for a violation of the TCPA. In so doing, we must assume "all allegations of fact in the plaintiff's complaint as true …." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). Plaintiff's complaint contains the following:

---

[5] Due to our resolution of this issue, we pretermit Sony's argument that Plaintiff's unjust enrichment claim was properly dismissed because Plaintiff failed to exhaust his potential remedies against Circuit City, the business from which Plaintiff actually purchased the DVD player at issue. *See Freeman*, 172 S.W.3d at 525-26.

30. Publicly, the company has spoken only in the most positive terms about its products generally, and its DVD business and DVD players specifically.

\* \* \*

34. With respect to promotion of its DVD players, specifically, Sony repeatedly described itself as "setting the standard in the DVD-Video category," "the market leader in the fastest-growing A/V product category," and as responsive to "increasing consumer demands for high quality DVD performance."… Moreover, Sony has dubbed itself "the groundbreaking technology innovator and market leader in DVD Video[";] and, as such, claims "Sony continues to provide superior DVD products that allow consumers to take full advantage of their growing DVD libraries."

\* \* \*

50. Defendants' non-disclosures and false and misleading statements, express or implied, as to the characteristics, ingredients, uses, quantities or benefits of Sony DVD Players were intended to induce, and did in fact induce, Plaintiff and members of the Class to purchase for personal use products, which they would not have otherwise purschase[d].

51. Defendants' non-disclosures and false and misleading statements, express or implied, in connection with their marketing and advertising of Sony DVD Players and those products' characteristics, ingredients, uses[,] quantities or benefits as described herein, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

\* \* \*

53. The advertising and written promotional materials and all other written promotional efforts undertaken and disseminated by Defendants and complained of herein also constitute unfair or deceptive acts or practices with the capacity to deceive consumers as to material facts within the meaning of the … [TCPA].

54. The standardized advertising, and written promotional materials and all other written promotional efforts undertaken by Defendants constitute public and commercial statements made in

connection with the sale of a product, which include statements which are untrue or misleading, and which are known by Defendants, or by the exercise of reasonable care should have been known, to be untrue or misleading, in violation of the … [TCPA]….

Tenn. Code Ann. § 47-18-104(a) provides that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors." The next subsection, subsection (b), lists forty acts or practices which are to be considered unfair and deceptive under the Act. However, prior to setting forth the forty specific acts or practices which are considered unlawful, the introduction to subsection (b) states that the specifically listed acts are not intended to "[limit] the scope of subsection (a) …." *See* Tenn. Code Ann. § 47-18-104(b). In other words, although an extensive list of acts or practices which are specifically deemed to be unfair or deceptive is set forth, the Act expressly states that this list is not to be considered exclusive.

In his complaint, Plaintiff alleged that Sony's false advertising resulted in violations of five of the specifically listed unfair acts or practices contained in subsection (b).[6] When dismissing Plaintiff's TCPA claims, the Trial Court ruled that Sony's advertisements, as a matter of law, were nothing more than puffing and were not actionable. Thus, since there was no unfair or deceptive act, the Trial Court did not undertake to examine whether Plaintiff stated a claim for a violation of the five specifically identified subsections.

While the number of Tennessee cases discussing the concept of "puffing" is limited, this Court in *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83 (Tenn. Ct. App. 1996) had the following to say on this topic:

> Liability for misrepresentation under Restatement (Second) of Torts § 402B arises only with regard to misrepresentations of material facts concerning the character and quality of the product in question. It does not arise from statements of opinion and, in particular, to the "kind of loose general praise of wares sold which, on the part of the seller, is considered to be 'sales talk,' and is commonly called 'puffing.'" Restatement (Second) of Torts § 402B cmt. g.…
>
> "Puffing" refers to loose general statements made by sellers in commending their products. These statements embody exaggerations, the truth or falsity of which cannot be determined easily, that amount to no more than an expression of the seller's opinion about the character or quality of the product. *Loula v. Snap-On Tools Corp.*, 175 Wis.2d 50, 498 N.W.2d 866, 868 (1993).

---

[6] Although the TCPA has been amended several times since the complaint was filed, the five subsections alleged to have been violated by Sony have remained essentially the same.

Buyers have no right to rely on these statements. Thus, a seller's characterization of an automobile as a "dandy" or a "good little car" or the "pride of our line" or the "best in the American market" will not give rise to liability under Section 402B. *See* Restatement (Second) of Torts § 542 cmt. e (1976).

The courts have generally been cautious about a seller's claim that its representations were mere puffing. Thus, the question of whether a particular statement amounts to an actionable misrepresentation will generally be left to the jury whenever the circumstances indicate that the buyer reasonably understood that he or she was receiving something in the way of an assurance as to specific facts. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 109, at 757 (5th ed. 1984). The courts are also more inclined to send close cases to the jury when the representation at issue relates directly to the product's safety.…

*Ladd*, 939 S.W.2d at 100.

We are aware that advertising a product as "superior" has been held to be puffing under the federal Lanham Act. *See, e.g.*, *LensCrafters, Inc. v. Vision World, Inc.*, 931 F. Supp. 1462, 1469 (D. Minn. 1996)("the characterization as 'vastly' superior is nothing more than common marketplace sales talk or 'puffery.' Such exaggeration or overstatement expressed in broad, vague, and commendatory language does not violate the Lanham Act and is understood as an expression of the seller's opinion."). Decisions interpreting the federal Lanham Act, of course, are not binding on this Court when interpreting the TCPA. We are explicitly required to give a liberal construction to the TCPA in order to promote the policies addressed by the statute. *See* Tenn. Code Ann. § 47-18-102.

Plaintiff sets forth in the complaint some but not all of the advertisements and promotional statements which he claims to have relied upon when deciding which DVD player to purchase. The question is whether these advertisement were such that they were mere puffery and, *as a matter of law*, should not have been relied upon by Plaintiff. Again, we emphasize that we are only determining if the complaint states a claim upon which relief can be granted. Plaintiff asserts that indeed he did rely upon the advertisements and that they were knowingly false and misleading. In order to conclude that his reliance was unreasonable, we essentially would have to hold, as a matter of law, that notwithstanding the amount of money that Sony spends on advertising its DVD players, Sony never intended for Plaintiff or any consumer actually to rely on so much as even one of these advertisements and, if there was such reliance by a consumer, it was altogether unjustified. Being "cautious about [Sony's] claim that its representations were mere puffing," we are not prepared to make such a broad holding at this motion to dismiss stage. *Ladd*, 939 S.W.2d at 100.

Plaintiff's final issue is his claim that the Trial Court erred when it made various specific factual findings because such findings were unnecessary when deciding a motion to dismiss. Because we have not relied upon these factual findings of the Trial Court when ruling on the issues presented in this appeal, whether or not the Trial Court should have made such findings is moot.

In summary, assuming, as we must, that all of the factual allegations contained within the complaint are true, we conclude that Plaintiff's complaint does state a claim upon which relief can be granted for a violation of the TCPA. As the sole basis upon which the Trial Court dismissed Plaintiff's TCPA claim was its holding that Sony's advertisements were, as a matter of law, mere puffing, and our having held that to be error, we remand this case for further proceedings as necessary on Plaintiff's TCPA claim. In all other respects, the judgment of the Trial Court is affirmed.

## Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part, and this cause is remanded to the Trial Court for further proceedings as necessary and consistent with this Opinion, and for collection of the costs below. Costs on appeal are assessed one-half against the Appellant Don Daugherty and his surety, and one-half against the Appellee Sony Electronics, Inc.

_____
D. MICHAEL SWINEY, JUDGE