NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0638n.06

Nos. 14-6330/6331

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FLSMIDTH INC.,

    Plaintiff-Appellee/Cross-Appellant,

v.

FIBER INNOVATION TECHNOLOGY, INC.,

    Defendant-Appellant/Cross-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Sep 14, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE: SUHRHEINRICH and GRIFFIN, Circuit Judges; and STAFFORD, District Judge.[*]

GRIFFIN, Circuit Judge.

Following a bench trial on plaintiff FLSmidth Inc.'s breach of contract, promissory estoppel, and unjust enrichment claims, the district court dismissed the first two claims and entered judgment in plaintiff's favor on the third. Defendant Fiber Innovation Technology, Inc. ("FIT") appeals the court's judgment regarding unjust enrichment and its award of prejudgment interest. Plaintiff conditionally cross-appeals the district court's dismissal of its breach of contract claim. We affirm the judgment of the district court and, accordingly, do not address plaintiff's cross-appeal.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

I.

The parties are companies that do business in the same supply chain. Defendant Fiber Innovation Technology spins specialized resin into fiber, which it sells to other companies that weave the fiber into specialty felt. Plaintiff FLSmidth manufactures pollution filtration bags made of that specialty felt.

In 2007, FIT learned that its competitors were offering rebates to companies like FLSmidth if they specified the use of their fiber in felt purchase orders. As a result, in October 2007, in conjunction with representatives from its resin supplier, Ticona Polymers, Inc., FIT's Vice President of Sales, Michael Hodge, began discussions with FLSmidth's President, Larry Patterson, about a possible rebate agreement. After some negotiation, the parties settled on a rebate price of $0.57 per pound of fiber for every felt purchase order in which FLSmidth specified the use of FIT's fiber. FLSmidth specified the use of FIT's fiber in as many as twenty-one purchase orders from late 2007 through 2009, totaling over $3 million in sales to FIT. Yet, FIT never paid the rebate.

FLSmidth filed this diversity action in federal court alleging Tennessee state-law claims for breach of contract, promissory estoppel, and unjust enrichment. Following a two-day bench trial, the district court dismissed FLSmidth's breach of contract and promissory estoppel claims as barred by the statute of frauds. However, the court entered judgment in FLSmidth's favor on its unjust enrichment claim, finding that FLSmidth conferred a benefit on FIT by specifying the use of FIT's fiber in its felt purchase orders and that it would be inequitable for FIT to retain that benefit without payment of the rebate. The district court calculated FLSmidth's damages using the $0.57-per-pound rebate rate for a total of $317,002.44 in damages. The court also granted FLSmidth's request for prejudgment interest on its damages award.

FIT appeals, arguing that the district court erred in entering judgment on FLSmidth's unjust enrichment claim and in awarding prejudgment interest. FLSmidth has filed a cross-appeal, arguing that, in the event we reverse the unjust enrichment claim, the district court erred in dismissing its breach of contract claim. We affirm.[1]

II.

A.

Because this is a diversity action filed in Tennessee, we apply the substantive law of Tennessee to plaintiff's state-law claims. 28 U.S.C. § 1652; *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). This court reviews findings of fact for clear error and questions of law, including the interpretation of state law, de novo. *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 645 (6th Cir. 2006). We review a court's decision to award prejudgment interest for an abuse of discretion. *Hunter v. Ura*, 163 S.W.3d 686, 706 (Tenn. 2005).

B.

On appeal, FIT argues that the district court applied the wrong legal test for assessing FLSmidth's unjust enrichment claim. FIT asserts that Tennessee applies two different unjust enrichment tests depending on the relationship of the parties. According to FIT, when the parties are *not* in contractual privity, Tennessee courts apply a three-prong test. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (involving parties not in contractual privity and stating that the elements of an unjust enrichment claim are: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit;

---

[1]FLSmidth expressly conditions its cross-appeal on the outcome of FIT's appeal, requesting this court to address its breach of contract claim only if we reverse the court's decision regarding unjust enrichment. In accordance with FLSmidth's presentation of the issues, we need not reach the issues raised in its cross-appeal given our decision to affirm the district court's judgment on the unjust enrichment claim.

and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.") (internal quotation and alteration omitted). And, according to FIT, when the parties *are* in contractual privity, Tennessee courts apply a five-prong test. *See Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998) (involving parties in contractual privity and stating that the elements of a quantum meruit action are: "1. There is no existing, enforceable contract between the parties covering the same subject matter; 2. The party seeking recovery proves that it provided valuable goods or services; 3. The party to be charged received the goods or services; 4. The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and 5. The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment."). FIT contends that the district court erred in applying the three-prong test in this case because FIT and FLSmidth were in contractual privity, but their agreement was unenforceable under the statute of frauds. FIT further argues the court's erroneous decision to apply the three-prong test was dispositive because the five-prong test requires that the plaintiff provide "valuable goods or services" (not simply a "benefit"), which FIT contends FLSmidth did not do.

Assuming (dubitante)[2] FIT's interpretation of Tennessee law, FIT's claim of error that FLSmidth did not provide "valuable goods or services" is without merit. FIT claims that the

___

[2]We are understandably dubious of the legal premise in FIT's argument, given its failure to cite any authority expressly recognizing the privity of contract distinction it advocates. Instead, FIT presents an argument by generalization, identifying several cases that, not surprisingly, fall neatly along its proposed contractual privity distinction. *Compare, e.g.*, *Freeman*, 172 S.W.3d at 525, *with Swafford*, 967 S.W.2d at 324. But, the fallacy in FIT's argument becomes apparent when one considers cases outside FIT's small sample size, like cases that use the three-part test, yet involve parties that were in privity of contract, *see Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 30, 33

evidence is undisputed that FLSmidth did not provide any goods or services to FIT, citing testimony of FLSmidth's President, Larry Patterson, that "[FLSmidth] does not sell any goods or services to [FIT]." However, the context of Patterson's testimony reveals that he was referring to whether FLSmidth and FIT were directly linked in the supply chain, not whether specifying the use of FIT's fibers constituted a "service."

With respect to the latter point, FIT concedes that, pursuant to the rebate arrangement, FLSmidth specified the use of FIT's fiber in its felt purchase orders. Those orders totaled over $3 million in business for FIT. It is also undisputed that, were it not for the rebate arrangement with FIT, FLSmidth would have specified another fiber manufacturer in its purchase orders and received a similar rebate. In other words, FLSmidth directed business to FIT via a third party, business it could have sent to another firm and received industry-practice compensation. We fail to see how this does not constitute a "service." Indeed, this is exactly the kind of conduct for which Tennessee case law authorizes unjust enrichment damages. *See Lawler v. Zapletal*, 679 S.W.2d 950, 955 (Tenn. Ct. App. 1984) (upholding unjust enrichment award in favor of a booking agent who booked four shows for a musical group without receiving the customary commission from the group). Accordingly, we reject FIT's primary argument on appeal that the district court erred in applying the incorrect legal test in assessing FLSmidth's unjust enrichment claim.

FIT alternatively argues that, regardless of what legal test applies, the district court erred in finding that the enrichment in this case was "unjust." *See Freeman*, 172 S.W.3d at 525 ("The

---

(Tenn. Ct. App. 2005); or cases using the five-part test, yet involve parties that were not in privity of contract, *see Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009); or cases citing both tests without distinction, *see First Nat. of N. Am., LLC v. Marks*, No. M2002-03104-COA-R3CV, 2004 WL 1114574, at *5 (Tenn. Ct. App. May 18, 2004). In short, FIT's vision of the law is more like a mirage.

most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust."). FIT contends that its failure to pay FLSmidth was not inequitable because it did not receive a rebate from its supplier, Ticona, for those same sales. However, as the district court found, the agreement between FLSmidth and FIT was not contingent upon FIT receiving a rebate from Ticona. FIT's rebate agreement with Ticona was an entirely separate arrangement and, therefore, is irrelevant to whether FIT's failure to pay its rebate to FLSmidth was inequitable. Rather, consistent with industry practice, FLSmidth and FIT understood that FIT would pay FLSmidth a rebate for every order in which FLSmidth specified the use of FIT's fiber. Because FIT received the benefit of over $3 million in sales as a result of FLSmidth's services, the district court did not err in concluding that it would be inequitable for FIT to retain that rebate.

FIT's final argument relating to unjust enrichment is that the district court erred in awarding damages based on the contract price of $0.57 per pound of fiber. In Tennessee, "[t]he measure of compensation for unjust enrichment is based on the reasonable value of the services 'to be judged by the customs and practices prevailing in that kind of business.'" *Lawler*, 679 S.W.2d at 955 (quoting *Chisholm v. W. Reserves Oil Co.*, 655 F.2d 94, 96 (6th Cir. 1981)). FIT claims that the district court misapplied the legal standard by calculating damages based on the $0.57 rebate rate because damages must be based on the reasonable value of the benefit conferred, not the contract price. *See Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009).

We agree with FIT that damages for unjust enrichment must be based on the reasonable value of the benefit conferred, not the contract price. *See id*. But, that does not mean that a district court necessarily errs in awarding damages equal to the contract price, as long as that price reflects the reasonable value as measured by the customs and practices in the industry. *See*

*Browns Installation, LLC v. Watermark Solid Surface, Inc.*, No. M2012-02264-COA-R3-CV, 2013 WL 5760636, at *5 (Tenn. Ct. App. Oct. 21, 2013) (rejecting the contention that the plaintiff's "charges" were not an appropriate basis to calculate damages because evidence at trial demonstrated that the charges represented the "reasonable value" for that work). FIT contends that there is no evidence of the reasonable value of FLSmidth's services because the district court precluded FLSmidth from submitting any evidence of its rebate agreements with other fiber manufacturers. Even so, there is ample evidence in the record that $0.57 represents a reasonable value. Most probative is the fact that, for orders placed by FLSmidth specifying FIT fiber, FIT entered into a rebate agreement with its supplier, Ticona, for the same rebate amount of $0.57 (Pg ID 1528). There is also evidence showing that FIT had a rebate agreement with one of FLSmidth's competitors for $0.64 (providing linear-yard-to-pound ratio). Moreover, FIT and FLSmidth entered into a written agreement in 2010 with a rebate price of $0.57. Given this evidence, the district court did not clearly err in finding that $0.57 per pound was the reasonable value of FLSmidth's services as judged by the customs and practices in the filter bag industry. *Lawler*, 679 S.W.2d at 955 (quotation marks omitted).

## C.

Finally, FIT argues that the district court erred in awarding prejudgment interest. The decision to award prejudgment interest rests in the sound discretion of the trial court and will not be disturbed on appeal absent "a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard requires us to give "considerable deference" to the district court's decision; we are not authorized to "substitute [our] judgment for that of the trial court." *Id.* "Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found." *Id.*

The decision to award prejudgment interest is guided by principles of equity. *Id*. "Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Id*. The overriding purpose of prejudgment interest is "to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Id*. Tennessee courts have identified six factors to aid trial courts in deciding whether prejudgment interest is fair and equitable: (1) promptness in commencing the claim, (2) unreasonable delay of the proceedings, (3) abusive litigation practices, (4) certainty of the existence of an underlying obligation, (5) certainty of the amount due, and (6) previous payment for the lost time value of the money. *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010).

FIT claims that the district court did not properly apply the multi-factor test, making its decision arbitrary and erroneous. Again, we disagree. In awarding prejudgment interest, the district court reasoned,

> [a]lthough the plaintiff seeks prejudgment interest from January 18, 2010, which is the date that plaintiff made a comprehensive demand for payment for the 2008 and 2009 rebate amounts with a detailed analysis of fiber orders and usage, the plaintiff failed to file suit against the defendant until almost 2 years later. Prejudgment interest may at times be inappropriate, such as when the party seeking prejudgment interest has been so inexcusably dilatory in pursuing a claim that consideration of a claim based on loss of use of the money would have little weight. *Scholz v. S.B. Intern., Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000), citing *R.E.M. v. R.C.M.*, 804 S.W.2d 813, 814 (Mo. Ct. App. 1991).

And, in its decision denying FIT's motion to alter the judgment, the district court explained, "the award of prejudgment interest at a rate of 10% is fair, given the particular circumstances of the case, to fully compensate FLSmidth for the loss of the use of funds to which it was legally entitled." The district court's reasoning indicates that it was aware of the governing legal

standard and applied it to the facts of this case by limiting the prejudgment interest award that it believed was consistent with fairness and equity. This reflects an exercise of discretion, not an arbitrary imposition of prejudgment interest. *Cf. State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000) (stating that an abuse of discretion occurs when "it affirmatively appears that the lower court's decision has no basis in law . . . and is therefore arbitrary, illogical, or unconscionable.").

Furthermore, this court will not find an abuse of discretion where the evidence supports the trial court's decision, *Myint*, 970 S.W.2d at 927, and here the record contains ample evidence to support the decision. FIT's underlying obligation to pay FLSmidth a $0.57 per pound rebate for orders in which it specified FIT's fiber was certain, as evidenced by Hodge's admission that he believed FIT had a rebate agreement with FLSmidth as of October 2007, when the parties settled on the $0.57 rebate price. The amount of the obligation was also reasonably certain, because FIT never alleged it owed an amount different than the $0.57 per pound rebate. Furthermore, FIT does not contend that FLSmidth unreasonably delayed the proceedings, engaged in abusive litigation practices, or was previously compensated for the lost time value of FLSmidth's money. *See Poole*, 337 S.W.3d at 791. Indeed, FIT concedes it has been in possession of the rebate money since 2008, thereby preventing FLSmidth from putting it to profitable use during that time. In light of these facts, we conclude that the district court did not abuse its discretion in awarding prejudgment interest.

Finally, FIT contends that the decision to award prejudgment interest at a rate of ten percent per annum, rather than five percent, constitutes an abuse of discretion because that high rate of return was unattainable in the economic climate of 2008 and 2009. FIT's generalized depiction of the economic climate is too tenuous a basis to second-guess the district court's

exercise of discretion. *See Myint*, 970 S.W.2d at 927 ("[T]he abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court."). The district court found that the rate of ten percent was fair under the facts of this case and would not constitute a windfall to FLSmidth; FIT points to nothing in the record to give us a firm conviction that the district court made a mistake in this regard. *See Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 191 ("An abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake . . . ."). Finding no manifest or palpable abuse of discretion in the district court's decision to award prejudgment interest at a rate of ten percent, we affirm its decision.

III.

For the foregoing reasons, we affirm the judgment of the district court.